UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SEACREST SERVICES, INC. and SUN BUILDING MAINTENANCE, LLC, <br><br> Defendants. | No. 12 C 9103 <br> Judge James B. Zagel |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Laborers' Pension Fund, et al. has brought a complaint against Defendants Seacrest Services, Inc. ("Seacrest") and Sun Building Maintenance, LLC ("Sun Building"), to collect unpaid wages, union dues and other contributions. Defendant Seacrest filed a motion to dismiss for failure to state a claim. Fed.R.Civ.P. 12(b)(6). For the following reasons, Seacrest's motion is granted.

### BACKGROUND

The facts are taken as true from Plaintiffs' allegations in the First Amended Complaint. Plaintiffs are a labor union ("the Union"), multi-employer benefit plans and their administrator acting on behalf of the Union. While National Building Resource Group, LLC ("NBR") was operating, the Union had entered into an agreement with NBR, based on which Plaintiffs were entitled to collect wages, union dues and other contributions from NBR. NBR failed to make these payments. On March 9, 2012, Plaintiffs obtained a judgment order against NBR in the amount of $79,905.74. *Laborers' Pension Fund et al. v. National Building Resource Group, LLC*, 1:11C03309 (N.D. Ill. Mar. 9, 2012).

In late October 2011, NBR ceased operations and sold a majority of its assets to Sun Building. Around the time of the transfer of NBR's assets, NBR and Sun Building entered into a

1

Customer Transition Agreement ("Customer Agreement"). Based on the Customer Agreement, Sun Building could retain NBR's former customers and obtain NBR's assets. In November 2011, Sun Building retained a majority of NBR's customers and hired a number of NBR's past employees.

The Customer Agreement also contained a guarantee provision, under which Seacrest was to guarantee the payments to NBR's former owners on behalf of Sun Building. Seacrest is listed as a managing member of Sun Building. Around the time Sun Building began its operations, Seacrest transferred funds to Sun Building and NBR to cover payroll, litigation expenses, and contributions owed by NBR to other union funds.

Plaintiffs allege that Seacrest and Sun Building were aware of the unpaid union dues and contributions NBR owed Plaintiffs because NBR informed them of the pending litigation between itself and Plaintiffs.

## ANALYSIS

When considering a motion to dismiss under Rule 12(b)(6), the court accepts all well-pled allegations as true and construes all reasonable inferences in favor of the plaintiff. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). A plaintiff need not allege all facts involved in a claim. *See Sanjuan v. Am. Bd. Of Psychiatry & Neurology, Inc*. 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). A plaintiff's obligation to provide the grounds of his entitlement to relief must contain more than labels and conclusions. *Id*. at 555.

**A. Successor Liability**

All three counts of Plaintiff's claims are based on the theory of successor liability. Successor liability is an equitable doctrine that provides an exception to the general rule that a purchaser of assets does not acquire a seller's liabilities. *Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 674 (7th Cir. 2011); *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1329 (7th Cir. 1990). Successor liability may be found in cases involving rights under federal law, including the collection of unpaid pension fund contributions under ERISA. *Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Tasemkin*, 59 F.3d 48, 49 (7th Cir. 1995) (citing *Upholsterers' Int'l*, 920 F.2d at 1327); *see also Einhorn v. M.L. Ruberton Constr. Co.*, 632 F.3d 89, 99 (3d Cir. 2011).

Although successor liability is traditionally applied only to sales of assets, it may also apply to consolidation or restructuring of corporations if the purchaser is a "mere continuation" of the seller or the transfer of assets is for a fraudulent purpose. *Upholsterers Int'l*, 920 F.2d at 1325–26.

Two conditions are required to find successor liability. First, the successor must have had notice of the claims before the acquisition. *Feinberg*, 629 F.3d at 674; *Chi. Truck Drivers*, 59 F.3d at 49. Second, there must be substantial continuity in the operation of the business before and after the acquisition. *Feinberg*, 629 F.3d at 674; *Chi. Truck Drivers*, 59 F.3d at 49. The parties do not dispute whether Seacrest had notice of the claims at issue. The dispute here is centered around the second element of successor liability, which is whether there was substantial continuity between Seacrest and NBR.

Courts in this district have held that substantial continuity is a question to be decided based on the totality of the circumstances. *Chicago Regional Council of Carpenters Pension Fund v. Estate Installations, Inc.*, 2013 WL 500833, at *2 (N.D. Ill. Feb. 8, 2013); *Chicago Dist.*

*Council of Carpenters Pension Fund v. A.F. McCarthy, Inc.*, 1996 WL 563459, at *4 (N.D. Ill. Sept. 30, 1996). In determining whether there was substantial continuity between the predecessor and the successor corporations, courts consider factors such as the successor's employment of "substantially all" of the predecessor's workforce, its use of the predecessor's plant, machinery, and equipment to produce the same products, its completion of the predecessor's unfinished work orders, and its agreement to honor the predecessor's warranties. *Upholsterers Int'l*, 920 F.2d at 1329.

Upon consideration of these and similar factors, I conclude that the requisite substantial continuity is not present here. First, it is not adequately alleged that Seacrest ever acquired any assets from NBR. While Plaintiffs allege that the "purpose of the Customer Agreement was to permit NBR to transfer its assets and customer list to Sun Building and Seacrest for purchase," that alone does not establish that Seacrest *in fact* purchased any of NBR's assets. Indeed, the Customer Agreement expressly provides for an agreement between only NBR, Sun Building and Frank Karkazis, a member/manager of NBR. Seacrest is included in the Customer Agreement only insofar as Seacrest was a guarantor of the agreed-upon payments between Sun Building and NBR, and a guarantor is liable only for that to which he or she has agreed. *Cf. Grundstad v. Ritt*, 166 F.3d 867, 871 (7th Cir. 1999).

Next, even when construed in their favor, Plaintiffs' allegations do not establish that Seacrest is a "mere continuation" of NBR or that there was substantial continuity between the two corporations. Plaintiffs do not allege that Seacrest employed most of NBR's employees, took over most of NBR's customers, or used NBR's equipment or facilities when NBR ceased its operations. *Cf. Upholsterers Int'l*, 920 F.2d at 1329. Instead, Plaintiffs allege that Sun Building hired NBR's former employees and supervisors, continued operating NBR's business without disruption, and used identical equipment formerly owned by NBR. These allegations establish

that Sun Building, not Seacrest, is NBR's successor.

Plaintiffs claim that Seacrest is also a successor of NBR because Seacrest (1) operated Sun Building from its inception and was listed as its managing member; (2) transferred funds to NBR for payroll and other expenses; (3) transferred funds to Sun Building for litigation costs; and (4) paid contributions NBR owed to another Union's fringe benefit funds. These facts, however, are insufficient to show that Seacrest was a mere continuation of NBR or that there was a substantial continuity between the two corporations. At most, Plaintiffs' allegations suggest that Seacrest was performing its duty as Sun Building's guarantor as provided in the Customer Agreement, and that Seacrest may have some kind of a financial interest in Sun Building. Indeed, in Plaintiffs' own words, the facts above took place "*on or before* Sun Building began its operations." First Amended Complaint, ¶ 15. It is difficult to see how transferring funds *before or at the time* of the purchase of assets amounts to substantially continuing NBR's business.

Finally, although successor liability can be found where the transfer of assets was fraudulent, there is no allegation of fraud in the complaint here. *See Chi. Dist. Council of Carpenters Pension Fund*, 1996 WL 563459 at *4.

**B. Alter Ego Liability**

Plaintiffs allege that "Seacrest operated Sun Building undercapitalized... and used the former NBR assets for the purpose of promoting its self-interest," and point out that Seacrest was listed as Sun Building's managing member. These allegations hint at alter ego liability, which involves "piercing the corporate veil," and suggest that Seacrest should be held liable as an alter ego of Sun Building.

The alter ego doctrine is a "sword" that allows "plaintiffs to pierce the corporate veil to impose liability on a defendant who unjustly seeks protection in the corporate form." *Lumpkin v. Envirodyne Indus., Inc*., 933 F.2d 449, 460 (7th Cir. 1991). Alter ego liability requires a

5

showing of an unlawful or fraudulent motive or intent. *Cent. States Se. & Sw. Areas Pension Fund v. Cent. Transport, Inc.*, 85 F.3d 1282, 1288 (7th Cir. 1996) ("Essential to the application of the alter-ego doctrine is a finding of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as a sham transfer of assets.").

There is no allegation of fraudulent intent or conduct on the Defendant's part, and in any case, Plaintiffs disavow reliance on alter-ego liability in its response to Defendant's motion. Pl. Resp. p.4, ¶ 2 ("Seacrest improperly seeks to dismiss by arguing that the plaintiffs have not sufficiently alleged facts to pierce the veil of defendant... *despite that no piercing claim has been made*.") (emphasis in original). Accordingly, while some of the allegations in the complaint seem to support the theory, I do not take it up here.

## CONCLUSION

For the foregoing reasons, Defendant's motion is granted, and the First Amended Complaint is dismissed as to Seacrest. Sun Building remains as a defendant, and this matter is set for further status on 3/11/14 at 9:15 a.m.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: January 24, 2014